# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

**UNITED STATES OF AMERICA,**

v.

**DONALD ALLEN EDWARDS,**
Defendant

Criminal Case No. 1:23cr00004

**REPORT AND RECOMMENDATION**

### *I. Background*

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's written consent, this case was referred to the Honorable Pamela Meade Sargent, United States Magistrate Judge, to conduct a plea hearing.

### *II. Facts*

The defendant has been charged in a multiple-count Indictment. On September 21, 2023, a plea hearing was conducted before the magistrate judge, and the defendant entered pleas of guilty to Counts One, Three and Four of the Indictment, charging him with assaulting a federal law enforcement officer, in violation of 18 U.S.C. §§ 111(a) and (b), possessing a firearm in furtherance of a drug trafficking crime and using and carrying a firearm during and in relation to a drug trafficking crime, second or subsequent conviction, in violation of 18 U.S.C. § 924(c), and possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and to a lesser included charge contained in Count Two of the Indictment of possessing with intent to distribute and distributing fentanyl, a

–1–

Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

At this hearing, the defendant was placed under oath and testified that he is 41 years old and that he has an associate's degree in Business Science. The defendant testified that he reads and writes the English language.

The defendant testified that he was diagnosed with and treated for post-traumatic stress disorder as a child. He testified that he had not been diagnosed with any other mental illness and had not received any additional mental health treatment. He testified that his post-traumatic stress disorder did not currently affect his ability to make decisions in his best interest and that it did not affect his ability to understand the nature of proceedings against him or the consequences of pleading guilty to the charges he faces. The defendant testified that he believed that he had been addicted to alcohol in the past. He said that he had participated in substance abuse treatment while in prison previously, but he had returned to the occasional use of alcohol after his release from prison in 2019, which continued until his arrest in this case in October 2022. The defendant stated that he had not used alcohol since his arrest. He also testified that he was not under the influence of any drug, medication or alcoholic beverage, other than the medications he was prescribed to treat his diabetes and hypertension. Defense counsel stated that he had no reason to suggest that the defendant was not competent to enter his pleas.

The defendant stated that he was fully aware of the nature of the charges against him and the consequences of pleading guilty to those charges. The defendant

was advised in open court of the charges contained against him in the Indictment. He testified that he had fully discussed the charges, and his case in general, with his counsel. He also testified that he had read the Amended Plea Agreement, ("Plea Agreement" or "Agreement"), in its entirety, and he had discussed the Plea Agreement with his counsel before signing the Agreement. He stated that he understood the terms of the Plea Agreement and that the document presented to the court set forth his agreement with the Government in its entirety. The defendant specifically testified that he understood that, under the terms of the Agreement, he was waiving any right to directly appeal or collaterally attack his conviction and sentence, insofar as he may legally do so.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises, other than those contained in the Plea Agreement with the Government, assurances or threats to him in an effort to induce his pleas. The defendant testified that he understood that the offenses with which he is charged are felonies and that, if his pleas are accepted, he will be adjudged guilty of those offenses and that this adjudication may deprive him of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess a firearm. The defendant further testified that he understood that the offenses with which he is charged include drug offenses and that, if his pleas to these charges are accepted, he will be adjudged guilty of the offenses and that this adjudication will make him ineligible for certain federal benefits including certain Social Security and food stamp benefits.

The defendant was informed of the possible maximum and mandatory minimum penalties provided by law for the offenses with which he is charged. In particular, the defendant stated that he understood that one of the firearm offenses to which he was pleading guilty carried a mandatory minimum sentence of 25 years' imprisonment, which must be served consecutively to every other sentence imposed. The defendant stated that he understood that he would receive a sentence of at least 25 years of imprisonment. The defendant stated that he further understood that his pleas were being entered pursuant to Rule 11(c)(1)(C), and that he and the Government had agreed that he should be sentenced to a term of imprisonment between 300 and 312 months.

The defendant further testified that, under the terms of the Plea Agreement, he was agreeing to forfeit any rights he held in 13 specific firearms and various accessories and rounds of ammunition, as specifically listed in the Plea Agreement.

The defendant testified that he was agreeing and stipulating that he had the following previous prior conviction for a felony drug offense, as set out in the Sentencing Enhancement Information filed by the Government in this case:

> Conviction in the United States District Court for the Western District of Virginia, Abingdon Division, on April 24, 2001, Case No. 1:00cr00087-001, for conspiracy to possess with intent to distribute and distribute crack cocaine in violation of Title 21, United States Code, Section 846.

The defendant stated that, under the terms of the Plea Agreement, he also was agreeing to plead guilty to violating the terms of his supervised release in Case No. 1:00cr00087-001. He stated that he further agreed that he should be sentenced to a period of incarceration of 24 months to be served concurrently to the sentence imposed by the court in this case.

The defendant also was informed that, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the guideline sentence for his case until after a presentence report has been completed and both parties have an opportunity to challenge the reported facts and the application of the Guidelines. The defendant stated that he understood that, after the applicable guideline range was determined, that the district judge has the authority in some circumstances to depart from the Guidelines and impose a sentence that is more severe or less severe than the sentence called for by the Guidelines. He stated that he understood that the Sentencing Guidelines were no longer mandatory, and after considering the Guidelines and the factors listed under 18 U.S.C. § 3553(a), the district judge may sentence outside of the Guidelines and up to the statutory maximum sentence. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney, the U.S. Attorney's Office or the U.S. Probation Office has given him. The defendant further testified that he was agreeing that Sentencing Guideline 2D1.1(c)(5) was applicable to his conduct in this case for a base offense level of 30 for at least 400 grams, but

less than 1.2 kilograms, of fentanyl. The defendant stated that he knew that parole had been abolished and that, if he is sentenced to prison, he will not be released on parole and will serve his full term of imprisonment.

The defendant also testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which would be waived or given up if his guilty pleas are accepted:

    i.    The right to plead not guilty to any offense charged against him;
    ii.    The right at trial to be presumed innocent and to force the Government to prove his guilt beyond a reasonable doubt;
    iii.    The right of assistance of counsel;
    iv.    The right to see, hear and cross-examine witnesses;
    v.    The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
    vi.    The right to decline to testify unless he voluntarily elected to do so in his own defense.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. He stated that he had no complaints whatsoever regarding his attorney's representation. The defendant also testified that he understood the possible consequences of his pleas and asked the court to accept his pleas of guilty to Counts One, Three and Four and the lesser included offense in Count Two of the Indictment.

The Government and the defendant have stipulated to the following facts

regarding the offenses with which the defendant is charged:

1. The following acts occurred on or about and between June 2022 and October 5, 2022, within the Western District of Virginia.

2. During June 2022, a reliable confidential source performed a controlled purchase of ¼ pound or more of methamphetamine, a quantity consistent with distribution/redistribution, from Donald Allen Edwards, ("Edwards"), within the Western District of Virginia.

3. On October 5, 2022, Edwards possessed with the intent to distribute 400 grams or more, a quantity consistent with distribution/redistribution, of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide) at his apartment and Exit 10 Self Storage, Unit 49, in the Western District of Virginia. Laboratory analysis confirmed that the substance possessed by Edwards was, in fact, a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide), a Schedule II controlled substance. This conduct constitutes a drug trafficking crime prosecutable in federal court.

4. On October 5, 2022, Edwards knowingly possessed firearms and ammunition. On that date, Edwards possessed an RG 23, .22 revolver loaded with six rounds of ammunition that was found in a bedside table at Edwards's apartment in Abingdon, Virginia, and he possessed the following firearms and ammunition at Exit 10 Self Storage, Unit 49, which was leased by Edwards in Bristol, Virginia:

   a. Intratec, model: Tec 9, Cal: 9, SN: 52251; w/15 rounds ammunition;
   b. New Frontier, model: C5, Cal: 9, SN: NONE;

    c. Hi Point, model: 4095, Cal: 40, SN: H82881, w/5 rounds ammunition;
    d. Century Arms, model: RAS47, Cal: 7.62x39 cal., SN: NONE, w/18 rounds ammunition;
    e. Polymer 80, Inc., with Patmos slide, electronic sight, flashlight, model: PF940V2, SN: NONE;
    f. Walther, model: P22, Cal.: .22, SN: WA285658, w/9 rounds ammunition;
    g. Sig Sauer, model: P 250, Cal.: 9, SN: EAK014018, w/8 rounds ammunition;
    h. Hi Point, model: C9, Cal.: 9, SN: P1798307;
    i. FNX, Cal.: 45 ACP, SNFX3U013083, w/12 rounds ammunition;
    j. Lorcin, model: L380, Cal.: .380, SN: 306384, w/one magazine;
    k. Smith & Wesson, Cal.: 9, SN: NBN3991, w/loaded magazine of 15 rounds ammunition;
    l. Black and tan AR-15 style rifle, Semi-Auto, Cal.: 7.62x39, SN: NONE, w/4 rounds ammunition;
    m. Ammunition: Black drum magazine (7.62x39), approximately 70 rounds;
    n. Ammunition: 3 (20 round) boxes and 1 bag loose 7.62x39 ammunition;
    o. Ammunition: Magazine with 23 9mm cartridges;
    p. Ammunition: 3 magazines, one loaded with 7 rounds of 9mm ammunition; and
    q. Ammunition: 1 box and loose ammunition.

5. Edwards's possession of the firearms and ammunition was in or affecting commerce, as they were manufactured outside of Virginia prior to being possessed by Edwards in Virginia.

6. At the time Edwards possessed the firearms and ammunition, he knew he previously had been convicted of a crime punishable by imprisonment for a term exceeding one year.

7. Edwards knew that, on April 24, 2001, he was convicted in the United States District Court for the Western District of Virginia, Abingdon Division, Case No.: 1:00cr00087-001, for conspiracy to possess with intent

to distribute and distribute crack cocaine, in violation of Title 21, United States Code, Section 846, and possessing a firearm in furtherance of a violent felony, in violation of Title 18, United States Code, Section 924(c). The Section 846 conviction is a felony drug offense as defined in Title 21, United States Code, Section 802(44).

8. Edwards's possession of the firearms described above was in furtherance of Edwards's drug trafficking crime.

9. Edwards stored the firearms in the same location as the drugs he possessed and intended to distribute, and many of the firearms were loaded and had rounds of ammunition in the chamber. As just one example, the Hi Point C9, FNX 45 ACP, and Lorcin L380 and associated ammunition were in a brown backpack along with a green bottle containing 129 blue pills. The firearms were readily available to Edwards to protect his drugs, drug business and proceeds.

10. On or about October 5, 2022, Edwards forcibly assaulted C.C., a Drug Enforcement Administration Task Force Officer.

11. The assault was done intentionally and voluntarily.

12. Specifically, while Edwards was being placed in a law enforcement vehicle, Edwards grabbed C.C.'s holstered sidearm, and a struggle ensued.

13. The assault involved physical contact with C.C.

14. The assault resulted in bodily injury to C.C.

15. Specifically, C.C. suffered scratches, abrasions and minor swelling of his right forearm as a result of Edwards's attempt to obtain C.C.'s holstered sidearm.

16. At the time of the assault, C.C. was engaged in the performance of official duties for the federal government.

17. Specifically, C.C. was placing Edwards in investigative detention while federal search warrants were executed.

After the Government presented its summary of this evidence, the defendant stated that he agreed that the Government could present this evidence at trial. The defendant had no dispute with or objection to the Government's summary of its evidence.

## PROPOSED FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering informed pleas;
2. The defendant is aware of the nature of the charges and the consequences of his pleas;
3. The defendant knowingly and voluntarily entered pleas of guilty to Counts One, Three and Four and a lesser included offense of Count Two of the Indictment; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned recommends that this court accept the defendant's pleas of guilty to Counts One, Three and Four and the lesser included offense of Count Two of the Indictment and adjudge him guilty of

those offenses.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    This 22nd day of September, 2023.

/s/   *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

–11–